## The People of the State of Illinois, Defendant in Error, v. Louis Paynter, Plaintiff in Error.

### Gen. No. 32,631.

Opinion filed December 19, 1928.

WILLIAM SCOTT STEWART, for plaintiff in error.

ROBERT E. CROWE, State's Attorney, for defendant in error; EDWARD E. WILSON, HENRY T. CHACE, JR., and HENRY E. AYERS, Assistant State's Attorneys, of counsel.

MR. PRESIDING JUSTICE HOLDOM delivered the opinion of the court.

This writ of error is sued out by Louis Paynter, seeking the reversal of the judgment of the criminal court of Cook county of commitment for contempt of court and a sentence of 60 days' confinement in the common jail of Cook county. The trial judge proceeded upon

the theory that the contempt was committed in the presence of the court, and as termed by the court in his finding, Paynter was "guilty of direct contempt."

It appears from the evidence that one Lorraine Irwin was a witness in the trial of the case of *People v. Rongetti,* in which case she had been subpoenaed as a witness for the prosecution. It further appears that the witness had been acquainted in a casual sort of way with Paynter about a couple of years; that Miss Irwin had arranged to meet Paynter after the adjournment of court for the morning session at 175 West Washington Street, in the loop district of Chicago. Miss Irwin left the court room and proceeded to the place of rendezvous; there she met Paynter as agreed; that she had been shadowed by police officers, and a little before two o'clock these officers accosted Miss Irwin and Paynter, and upon the assumption that Miss Irwin was not going to return as a witness to the criminal court, they took her to the criminal court. One of the police officers examined by the trial judge testified that he had followed Miss Irwin from the vicinity of 77 West Washington Street and noticed that Paynter was some 20 feet to the rear of her; that they both entered the lobby of the building 175 West Washington Street; that after a few minutes Paynter and Miss Irwin came out of the building and were about to get into a taxicab, when he, the officer, stepped up and said that he was a police officer and that Miss Irwin was due in Judge Comerford's court at two o'clock; whereupon Paynter said, "We have plenty of time, it is quarter of two," and that the officer retorted that it was five minutes of two; whereupon the officer took Miss Irwin into custody and told Paynter to move along. Paynter returned to Judge Comerford's court room and was examined by the judge, and stated that he had known Miss Irwin for a couple of years; that he was employed by the board of education as a

fireman, working nights from 1 to 9 o'clock in the morning; that he had formerly been an investigator for the State's attorney's office, and had investigated a case some time previous to "this one" for William Scott Stewart, attorney for the defendant Amante Rongetti; that the last time he had appeared around the Criminal Court Building was during the trial of the *Scott* case; that he had attended court during the morning session merely as a spectator, and did not talk about the case to anyone, and he further testified that Miss Irwin called him up the night before and told him she was going to be in court as a State witness; that he said he would probably be down there himself; that she spoke to him in the hall after court had adjourned and he suggested that she meet him at 175 West Washington Street, where he was going for a union card. He further stated that he had gone to the office of defendant's attorney, but did not see Miss Irwin, but that he met her in accord with his appointment at 175 West Washington Street; that he was with her only a few minutes and discussed nothing about the case to be tried, and did not intimidate her or threaten her in any manner, and was looking for a cab to go back to the court room for the afternoon session when the officer came up and took Miss Irwin into custody.

At the conclusion of this testimony the trial judge said that he did not believe that Paynter was telling the truth, and asked the State's attorney to file a proper petition under which Paynter might be attached for contempt, and thereupon on the order of the court Paynter was taken into custody. The next day the court dealt with him for contempt.

It is clear from the foregoing that whatever Paynter might have been guilty of, he was not guilty of a direct contempt of the court by any conduct of his in the presence of the court or within the precincts of the Criminal Court Building.

There was no information filed against Paynter, nor any written charge of contempt. There was no document charging Paynter with contempt, which he might have answered under the rules of law and purged himself of the charge. The order of commitment fails to set forth any fact in the case which would tend to prove that Paynter was guilty of a contempt of court, either direct or constructive.

The court seems to have based his judgment upon the fact that he did not believe that Paynter was telling the truth. However, if the court was correct in this surmise, it was no justification because he believed Paynter to be guilty of perjury that he should adjudge him guilty of a contempt of court; a contempt constructively committed in the presence of the court.

We have scanned the record and all the evidence in it in an effort to find a justification for the court's action, but fail to find any evidence justifying Paynter's commitment. There is not one scintilla of evidence, either from the testimony of Lorraine Irwin or Paynter or the police officer, or anyone else testifying, to prove that Paynter was guilty of a contempt of court committed in the presence of the court. Lorraine Irwin denied that Paynter endeavored in any way to influence her in the case. While others may have intimidated Miss Irwin, there is no evidence which in the slightest degree sustains the charge that Paynter had done anything to either influence or intimidate her, which she herself very candidly admitted.

We think this case in analogous in every material point to that of *People v. Berrell*, 216 Ill. App. 341, and equally decisive of the case at bar, in which this court said:

"Such summary and arbitrary proceeding baffles credence in this twentieth century, supposedly at least an era of freedom under well-settled legal principles.

In this case plaintiff in error, without any indictment or charge of offense or any form of trial, was pronounced guilty of the crime of perjury in the presence of the court, and immediately sentenced to imprisonment in the county jail. No opportunity was afforded to meet the court's charge, nor is the nature or quality of the perjury disclosed. What moved the mind of the court to the conclusion that plaintiff in error was guilty of perjury is not apparent from the record. What occurred, if anything, to impel the court to adjudge plaintiff in error guilty of contempt is nowhere set forth. The order of commitment contains all the proceedings which the record discloses. * * * *People v. Stone,* 181 Ill. App. 475. Such summary procedure the law will not tolerate. Every person is entitled before condemnation to be informed in some way of the offense charged against him and be accorded an opportunity to be heard by himself and by counsel in exculpation of the offense charged.''

The proceeding is irregular and illegal in every particular. There is no justification in the record for the court's action. Therefore the judgment of the criminal court committing Paynter for contempt is reversed.

*Reversed.*

WILSON and RYNER, JJ., concur.